**SO ORDERED**

**SIGNED this 27 day of November, 2023.**

_____
**Pamela W. McAfee**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### FAYETTEVILLE DIVISION

IN RE:

**DANIEL JAMES MAYNOR,**

     **DEBTOR**

**CASE NO.
23-00958-5-PWM
CHAPTER 13**

### MEMORANDUM OPINION DENYING CONFIRMATION OF CHAPTER 13 PLAN

The matter before the court is the chapter 13 trustee's objection to confirmation of the debtor's second amended plan. A hearing took place in Fayetteville, North Carolina on September 7, 2023, at the conclusion of which the court denied confirmation from the bench. This memorandum opinion sets forth the reasons for the court's decision.

### BACKGROUND

Daniel James Maynor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code on April 5, 2023. Joseph A. Bledsoe, III (the Trustee) is the standing trustee assigned to the case. Mr. Maynor filed his Schedules and Statements, D.E. 11, and his chapter 13 plan, D.E. 12, on April 13, 2023. The Trustee objected to the plan and sought dismissal of the case on May 12, 2023, based on the failure of Mr. Maynor to file tax returns for tax years 2021 and 2022. D.E. 14, 15. The initial hearing on confirmation and the motion to dismiss was continued

from June 8, 2023 to July 11, 2023. Mr. Maynor filed an amended plan on June 19, 2023, D.E. 21 (the First Amended Plan), to which the Trustee objected on June 30, 2023, D.E. 22, based on failure to make plan payments, failure to file prepetition tax returns, and the inclusion of certain "nonstandard provisions" in Section 8.1 of the First Amended Plan, as follows:

> The liquidation test of 11 USC 1325(a)(4) assumes a 6% cost of sale for real property and a 10% cost of sale for personal property.
>
> Plan provision 7.2 shall not apply.
>
> EDNC LBR 4002-1(g)(4) shall not apply post-confirmation.
>
> Paragraph 10 of the Order and Notice to Chapter 13 Debtor issued on April 7, 2023 shall not apply.
>
> Upon confirmation, the Debtor's interest in 8016 Lane Road in Linden, NC shall no longer be property of the bankruptcy estate pursuant to 11 USC 1329(b)(9), 11 USC 1327(b) and plan provision 7.1.
>
> The Debtor shall not [be] required to file a notice pursuant to 11 USC 363(b) prior to selling any vested property.
>
> The debtor shall not be required to obtain a court order prior to selling any vested property.

D.E. 22 at ¶ 19 (citing the First Amended Plan, D.E. 21 at ¶ 8.1). As discussed more thoroughly below, the nonstandard provisions generally seek to excuse Mr. Maynor from the requirement that the debtor obtain court authority to sell a residence postconfirmation. The Trustee's objection noted that the mortgage lien and debtor's exemption on the real property identified in the nonstandard provisions, when compared to the scheduled fair market value of the property, resulted in no net equity in the real property for the estate.

The July 11, 2023 hearing on confirmation was continued to August 10, 2023, D.E. 24, and an interim consent order was entered on the Trustee's motion to dismiss, D.E. 27, with the motion to dismiss also continued to August 10, 2023. At that hearing, the parties agreed to continue both the motion to dismiss and the Trustee's objection to confirmation to September 7, 2023, in order

to resolve the issues regarding the outstanding tax returns. At that same hearing, the court forecast to counsel that it would be willing to consider excusing Mr. Maynor from the requirements to seek court authority to sell his residence based on the specific facts of the case (namely, the lack of net equity for the estate), but would not excuse compliance based on Mr. Maynor's inclusion of the nonstandard provisions in the First Amended Plan, nor based on the debtor's election to have his property "vest" at confirmation. The parties indicated they could likely agree to some plan language to accomplish this.

Two days later, Mr. Maynor filed another amended plan, D.E. 32 (the Second Amended Plan), in which the original nonstandard provisions were not only retained, but significantly expanded. This plan contains the following revised nonstandard provisions, with changes from the First to the Second Amended Plan highlighted in italics, and redactions shown by strikethrough:

a. The liquidation test of 11 USC 1325(a)(4) assumes a 6% cost of sale for real property and a 10% cost of sale for personal property.

b. Plan provision 7.2 shall not apply. *This is a deviation from the EDNC Local Form Plan in order to avoid conflict with the Debtor's rights pursuant to 11 USC 1321, 11 USC 1322(b)(9), and 11 USC 1327(b).*

c. EDNC LBR 4002-1(g)(4) shall not apply post-confirmation *to the real property located at 8016 Lane Road, Linden, NC 28356 because the property is not non-exempt and post-confirmation it will not be property of the bankruptcy estate.*

d. Paragraph 10 of the Order and Notice to Chapter 13 Debtor issued on April 7, 2023 shall not apply *to the real property located at 8016 Lane Road, Linden, NC 28356 because the property is not non-exempt and post-confirmation it will not be property of the bankruptcy estate.*

*e. The Debtor must notify his attorney and the trustee of any change of address or if he experiences a substantial change in his property ownership.*

f. Upon confirmation, the Debtor's interest in 8016 Lane Road in Linden, NC shall no longer be property of the bankruptcy estate pursuant to 11 USC 1329(b)(9), 11 USC 1327(b) and plan provision 7.1.

g. The Debtor shall not [be] required to file a notice pursuant to 11 USC 363(b) *or Federal Bankruptcy Rule 6004(a)* prior to selling ~~any~~ vested property.

h. The debtor shall not be required to obtain a court order prior to selling any vested property.

*i. If the Debtor seeks to sell, lease or use estate property outside the ordinary course during the pendency of the case (e.g. property of the kind described in 11 USC 541(a)(5)), then he shall comply with the requirements of 11 USC 363(b), 11 USC 1303 and Fed Bankr Rule 6004 but shall not be required to comply with EDNC LBR 4002-1(g)(4). This provision is intended to identify the proper procedural mechanism that is applicable and avoid neglect and/or duplication with regard to any substantive or procedural requirement.*

D.E. 32 at ¶ 8.1. The Trustee again objected to confirmation based on the inclusion of the nonstandard provisions,[1] D.E. 33. Mr. Maynor submitted a memorandum of law in support of confirmation in which he addressed the meaning of the terms "vested" and "exempt," and represented that his inclusion of the nonstandard provisions was "intended to bring clarity and to avoid having [Mr. Maynor's] rights inappropriately infringed by a form plan which cannot abridge or modify his substantive rights." D.E. 35 at 4. The Second Amended Plan and the Trustee's objection to confirmation of that plan were the matters before the court at the September 7, 2023 hearing. Because the court agreed with the Trustee in all respects, and because Mr. Maynor presented no acceptable basis on which the court could approve the Second Amended Plan, confirmation was denied, with the court indicating to all counsel that it would enter this subsequent opinion stating the bases for denial in more detail. The court notes that as of the date of this opinion, Mr. Maynor's plan has yet to be amended.

## JURISDICTION

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1334, and this is a statutorily core proceeding under 28 U.S.C. § 157(b)(1) that this court is authorized to hear and determine. The United States District Court

---

[1] The Trustee does not object to the first nonstandard provision regarding the calculation of the liquidation value of the debtor's assets.

for the Eastern District of North Carolina has referred this case and this proceeding to this court under 28 U.S.C. § 157(a) by its General Order of Reference entered on August 3, 1984. This proceeding is constitutionally core, and this court may enter final orders herein. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

The nonstandard provisions in the Second Amended Plan implicate a number of rules and procedures in this district and in the Bankruptcy Code, which include the following: First, the form chapter 13 plan adopted by this district provides, as relevant here:

> **7.1 Vesting of Property of the Bankruptcy Estate:** *(Check one.)*
> Property of the estate will vest in the Debtor(s) upon:
> ☐ plan confirmation.
> ☐ discharge
> ☐ other
>
> **7.2 Possession and Use of Property of the Bankruptcy Estate:** The use of property by the Debtor(s) remains subject to the requirements of 11 U.S.C. § 363, all other provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

Mr. Maynor checked the "plan confirmation" box in section 7.1. Second, Local Rule 4002-1(g)(4), which applies to chapter 13 debtors, provides:

> (4) DISPOSITION OF PROPERTY.  After the filing of the petition and until the plan is completed, the debtor shall not dispose of any non-exempt property having a fair market value of more than $10,000 by sale or otherwise without prior approval of the trustee and an order of the court.

E.D.N.C. LBR 4002-1(g)(4). Finally, the Notice and Order to the Debtor, which is issued upon the filing of a chapter 13 case, provides, as is relevant here:

> (4) <u>Financial/Address Changes</u>: You must notify your attorney and the trustee of any change of mailing address or employment. You must notify the court of any change in mailing address. You must also promptly notify your attorney and the trustee of any substantial changes in your financial circumstances, including substantial changes in your income, expenses, or property Ownership. . . .
>
> * * *

5

 (10) <u>Disposition of Property</u>: You must not dispose of any non-exempt property having a fair market value of more than $10,000.00 by sale or otherwise without prior approval of the trustee and an order of this court.

D.E. 8.

The Trustee's objection contends that Mr. Maynor's nonstandard provisions seek to circumvent this court's Local Form Plan (E.D.N.C. Local Form 113A), the Local Rules, the Order and Notice, and certain provisions of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure, all without any justification or sufficient explanation, and that these provisions are inappropriate and do not comply with the Bankruptcy Code.[2] The Trustee further contends that Mr. Maynor's attempt to abrogate Local Rule 4002-1(g)(4) based on a distinction between exempt and non-exempt property is an improper interpretation of how exemptions operate, and that two of the nonstandard provisions are duplicative of requirements to which the debtor is already subject. Taking all things together, the Trustee also raised the over-arching and troubling question of whether nonstandard provision (e) was "to limit the debtor's obligations under the Order and Notice, or to obfuscate and confuse the trustee as to his intention with respect to this or any of the other nonstandard provisions of the Plan." D.E. 33 at ¶ 31. Finally, the Trustee notes that the issues raised by these nonstandard provisions may be new to Mr. Maynor but certainly are not new to the court, having been raised by Mr. Maynor's counsel in other cases and resolved against his position multiple times within this district.[3]

---

[2] *See In re Mank*, No. 19-04199-5-SWH, 2020 WL 1228671 at *3-4 (Bankr. E.D.N.C. March 10, 2020), for a comprehensive discussion of the Official Form Plan, the Local Form Plan, and appropriate use of nonstandard provisions.

[3] At the September 7 hearing, the Trustee observed, "I don't think it's appropriate to say that on all of these issues so far in the bankruptcy court, and I think there's a handful of district court opinions too, where [debtor's counsel] has made these arguments and lost—I don't think it's appropriate to say 'even though I lost . . . I'm hoping that the Fourth Circuit changes their mind so based on that you should confirm the plan.'"

This court addressed the use of nonstandard provisions in chapter 13 plans in *In re Skilling*, where, like here,

> [t]he Nonstandard Provisions at issue largely involve whether [the debtor] may sell property without court approval, which is required in this district whether or not the property vests with the debtor at confirmation. Through his Nonstandard Provisions, [the debtor] wants the applicable local form plan provisions, Local Rules, and Order and Notice to the Debtor to be deemed inapplicable. In support of the Nonstandard Provisions, he argues that the district's local form plan and Local Rules are inappropriate and inconsistent with the Bankruptcy Code.

*In re Skilling*, No. 22-01085-5-PWM (Bankr. E.D.N.C. Oct. 10, 2022), D.E. 25 at 7.[4] There, the court noted that

> [t]he propriety of subsections of Local Rule 4002-1(g) and provisions of the Order and Notice to Debtor has been the subject of numerous arguments and opinions in this district dating back to 2018, and the two standing chapter 13 trustees and counsel for Mr. Skilling[5] have been involved in most, if not all, of these arguments. While coming before the court in a variety of procedural postures, the issues related to the court's authority to impose requirements on chapter 13 debtors related to the sale of assets postconfirmation has been addressed on multiple occasions by courts in this district at both the bankruptcy and district court level.

*Id.* Relying on *In re Mank,* No. 19-04199-5-SWH, 2020 WL 122867 (Bankr. E.D.N.C. March 10, 2020) (Humrickhouse, C.J.), the court rejected the nonstandard provisions included in the *Skilling* plan but held that "[t]he court will address a motion for a variance from the Local Rules, or, for

---

[4] Notably, the nonstandard provisions in *Skilling* are virtually identical in purpose, though somewhat less problematic in text, to those included in the instant case. In *Skilling*, the court denied confirmation of the debtor's plan based on inclusion of these nonstandard provisions:

- Plan provision 7.2 shall not apply.
- EDNC LBR 4002-1(g)(4) shall not apply.
- Paragraph 10 of the ORDER AND NOTICE TO DEBTOR issued by the court on May 24, 2022 (DE 9) shall not apply.
- It shall not be necessary for the court to approve the sale of any vested property.
- 11 USC 363(b) and BR 6004 shall not apply to property that has vested in the Debtor on account of the plan being confirmed.

*Skilling*, No. 22-1085-5-PWM, D.E. 25 at 3, 10.

[5] Counsel for Mr. Maynor also was counsel for Mr. Skilling.

example, whether 11 U.S.C. § 363(b) and Federal Rule of Bankruptcy Procedure 6004 apply after confirmation, *when relevant to a particular debtor's circumstances*." *Skilling*, No. 22-01085-5-PWM, D.E. 25 at 9 (emphasis added). In fact, this case in its present posture is virtually indistinguishable from *Skilling* and multiple other prior cases in which the court has denied confirmation based on the inappropriate and/or unsupported use of nonstandard provisions.[6]

Here, despite the guidance from this court in *Skilling*, and notwithstanding the specifically expressed readiness of both the court and Trustee to excuse Mr. Maynor's compliance with some requirements based purely upon his articulation of an appropriate factual basis on which to do so, Mr. Maynor still seeks a variance from the rules and procedures that apply throughout this district based on his insistence first that "vesting" insulates him from further interaction with the court, and second that the rules and procedures are fundamentally invalid and abridge his substantive rights. Specifically, Mr. Maynor seeks exemption from standard language in all chapter 13 plans in this district (provision 7.2, which specifies the continuing applicability of 11 U.S.C. 363); this district's Local Rule LBR 4002-1(g)(4); and the standard order issued to a chapter 13 debtor (the Order and Notice), based on his legal interpretation of the terms "vesting" and "non-exempt" property – but with no indication that Mr. Maynor intends to sell his property during the life of the case. Practically speaking, Mr. Maynor's overall goal here has two parts, with the second taking apparent precedence: Part One is to not have to request and obtain permission to sell property valued at $10,000 or above, which could have been accomplished by way of a requested variance. Part Two is to accomplish that goal specifically on this basis: "because the property is not non-

---

[6] A provision under consideration by the *Mank* court states: "Pursuant to 11 U.S.C. 1322(b)(9), all property owned by the Debtor at the time of the filing of the bankruptcy case shall vest in the Debtor upon confirmation of the plan. 'Vest' means for the property to be removed from the bankruptcy estate therefore obviating the need for the Debtor to file a Notice or Motion with the court pursuant to 11 U.S.C. 363(b) when using, selling or leasing property outside the ordinary course." *Mank*, 2020 WL 1228671, at *5. In both cases, the Trustee objected and the debtors' use of that language precluded confirmation by the court.

exempt and post-confirmation it will not be property of the bankruptcy estate," due to having vested, as Mr. Maynor defines that term. D.E. 32. Mr. Maynor insists that through his use of nonstandard plan provisions, he is seeking to "bring clarity" while avoiding any infringement of his rights. Presumably, he is also seeking a court order agreeing with these principles that may be used by other debtors to insulate themselves from the rules and procedures simply by checking the box indicating that property vests "at plan confirmation" on their plan and/or by claiming an exemption in the property, regardless of the other applicable facts.

For the reasons that follow, the mechanism used by Mr. Maynor – that being the inclusion of nonstandard provisions containing purported statements of law, all of which are misplaced in a chapter 13 plan, many of which are contested, and some of which are inaccurate – will not be approved by this court in this case, or in cases to follow. The court concludes that the notice and approval of sale requirements Mr. Maynor seeks to avoid are not only appropriate, but essential to the straightforward and efficient administration of bankruptcy cases in this district, and to the transparency and candor that are so crucial to the workings of the court – while acknowledging that under the appropriate factual circumstances those requirements may be waived.[7]

This conclusion breaks no new ground, deriving as it does from one of the most basic precepts of bankruptcy law. "Chapter 13 proceedings provide debtors with significant benefits: For example, debtors may retain encumbered assets and have their defaults cured, while secured creditors have long-term payment plans imposed upon them and unsecured creditors may receive payment on only a fraction of their claims." *Carroll v. Logan*, 735 F.3d 147, 151 (4th Cir. 2013) (citing 11 U.S.C. §§ 1322, 1325). In exchange for these benefits, which also include the presence

---

[7] For example, variance may be appropriate where a plan provides that general unsecured creditors will be paid in full with interest, as there would be no possible effect on the administration of the chapter 13 case if property were to be sold postconfirmation.

of the automatic stay for three to five years and the discharge of sometimes hundreds of thousands of dollars of debt, it is reasonable for the court to overlay disclosure requirements upon the major financial transactions conducted by debtors over the course of the case, including requiring court authority to sell assets and compliance with a handful of other rules that may, as an additional advantage, facilitate successful completion of a plan and entry of discharge. *See In re Murphy*, 327 B.R. 760, 772 (Bankr. E.D. Va. 2005) ("[R]egardless of whether property revesting in the debtor is technically property of the estate, 'until all payments due under the plan are made, both the trustee and the unsecured creditors have an interest in the preservation of the debtor's financial situation . . ..'") (quoting *Barbosa v. Soloman*, 235 F.3d 31, 37 (1st Cir. 2000)), *aff'd*, *Murphy v. O'Donnell* (*In re Murphy*), 474 F.3d 143, 153 (4th Cir. 2007).

In part because of that continuing interest in "the preservation of the debtor's financial situation," the bankruptcy process is dependent upon disclosure and transparency. The Bankruptcy Code, as well as this court's procedures and local rules, are designed, in some measure, to keep the stage light shining on the debtor's financial transactions throughout the course of the bankruptcy case. Through his nonstandard provisions, Mr. Maynor seeks to have this court adopt, through plan confirmation, his legal conclusions that the Bankruptcy Code as a matter of law allows him to pull the stage curtain closed at confirmation, and, further, that this court's local rules and procedures abridge those rights. Numerous cases, including *Murphy*, demonstrate that this is not correct.

Because these same nonstandard provisions have been presented to the court so many times before, consistently resulting in denial of confirmation for the same reasons present in this case, the court reasonably could base this opinion on simply that: Repetition alone, with no new binding law and no unique factual circumstances, is now and will remain insufficient to accomplish Mr.

10

Maynor's goal. Indeed, to engage in further discussion comes uncomfortably close to issuing an advisory opinion on the legal arguments embedded in Mr. Maynor's nonstandard provisions, which the court is loath to do. What the court emphatically *does* intend to do, however, is to articulate the bases upon which it will not confirm plans that include provisions that are identical in substance, form, or intent to those present in Mr. Maynor's Second Amended Plan. For the reasons that follow, the court specifically rejects Mr. Maynor's arguments on the appropriate definition and treatment of exempt, non-exempt, and "not non-exempt" property, his arguments on the meaning and significance of vesting, and his contentions that this court's local form plan and local rules abridge rights given to the debtor under the Bankruptcy Code.

A.      **Limited Significance of Whether Property is "Not Non-Exempt"**

In North Carolina, debtors who seek relief under the Bankruptcy Code are required to use the North Carolina statutory and constitutional exemptions. *See* N.C. Gen. Stat. § 1C-1601(f). Subject to some variations not relevant here, the statutory exemption for real or personal property used as a residence (known colloquially as the "homestead exemption") is "the debtor's aggregate interest, not to exceed thirty-five thousand dollars ($35,000) in value." N.C. Gen. Stat. § 1C-1601(a)(1). The amount of the claimed homestead exemption may be impacted by any exemption claimed under § 1C-1601(a)(2) (the "wildcard exemption"), and as a result of claiming some items under his wildcard exemption, Mr. Maynor claimed a homestead exemption in the amount of $34,513.24. Schedule C-1, D.E. 11 at 10. Mr. Maynor scheduled the value of the residence as $150,000, and indicated that it is encumbered by a mortgage lien of $132,287. *Id.* Mr. Maynor contends that his claim of exemption "renders that property exempt based on the definition used by the [North Carolina] Administrative Office of the Courts," as follows:

11

**Exempt property** – Property, or the value of a portion of it, that the law allows you to keep for your use rather than surrender it for the payment of your debts, provided that you follow the correct procedure to claim the exemption.

D.E. 35 at 3.

In his memorandum, Mr. Maynor states that nonstandard provision (c)[8] is not seeking to determine that the claim of exemption removes the real property from the bankruptcy estate, but that because the property is "exempt property, it is not non-exempt property and E.D.N.C. LBR 4002-1(g)(4) does not apply." D.E. 35 at 3-4. Presumably, then, the portion of nonstandard provision (c) stating that post-confirmation the property "will not be property of the estate" relates to vesting (as discussed below), and not the claimed exemption. The assertion that the property is "not non-exempt" is a misstatement of the law and a misinterpretation of the language of the Local Rule and Order and Notice.

---

[8] Mr. Maynor's included nonstandard provisions asserting as a matter of law that certain rules and orders do not apply because his residence is "not non-exempt" include the following:

c. EDNC LBR 4002-1(g)(4) shall not apply post-confirmation to the real property located at 8016 Lane Road, Linden, NC 28356 because the property is not non-exempt and post-confirmation it will not be property of the bankruptcy estate.

d. Paragraph 10 of the Order and Notice to Chapter 13 Debtor issued on April 7, 2023 shall not apply to the real property located at 8016 Lane Road, Linden, NC 28356 because the property is not non-exempt and post-confirmation it will not be property of the bankruptcy estate.

As noted above, Local Rule 4002-1(g)(4) provides:

DISPOSITION OF PROPERTY. After the filing of the petition and until the plan is completed, the debtor shall not dispose of any non-exempt property having a fair market value of more than $10,000 by sale or otherwise without prior approval of the trustee and an order of the court.

Paragraph 10 of the Order and Notice reads, "Disposition of Property: You must not dispose of any non-exempt property having a fair market value of more than $10,000.00 by sale or otherwise without prior approval of the trustee and an order of this court."

The issue is whether the property itself, *or only a specified value*, is exempt. The statute contains a limitation on the value that a debtor may claim as exempt. Even the language cited by Mr. Maynor from the North Carolina Administrative Office of the Courts references "the value of a portion of" the property, not the entire property. The varying arguments that have been made by Mr. Maynor's counsel on this issue have been thoroughly examined and rejected in *In re Sugar*, No. 19-04279-5-DMW, 2023 WL 1931078, at *7 (Bankr. E.D.N.C. Feb. 10, 2023) (Warren, C.J.), *appeal pending*, No. 5:23-cv-00082-FL (E.D.N.C.); *see also Reeves v. Callaway*, 546 Fed. Appx. 235, 241 (4th Cir. 2013) (under North Carolina's exemption laws, property of a debtor which is not subject to an unlimited or in-kind exemption, such as a debtor's residence, remains property of the bankruptcy estate notwithstanding a debtor's claim of exemption in it).

Mr. Maynor contends that Judge Callaway of this district's interpretation of the term "non-exempt" is consistent with his, citing *In re Robinson*, No. 20-02747-5-JNC, 2020 Bankr. LEXIS 3769 (Bankr. E.D.N.C. Dec. 14, 2020), and *In re Nigro*, No. 21-01123-5-JNC, D.E. 25 (Bankr. E.D.N.C. Sept. 7, 2021). D.E. 35 at 4. Having reviewed those opinions, this court cannot agree with that conclusion. In *Robinson*, the court simply found that there was no equity in the property at issue and ***excused the debtor from compliance with Local Rule 4002-1(g)(4)***. *Robinson*, 2020 Bankr. LEXIS 3769 at *5-6 ("A nonstandard chapter 13 plan provision removing the Residence . . . from Local Rule 4002-1(g)(4) compliance is permitted and will be approved in an amended plan.") (emphasis added). That is precisely what this court indicated it would do had Mr. Maynor not included language in his nonstandard provisions purporting to set forth the legal implications of vesting and exemptions. Put more bluntly, Judge Callaway did not find that the Local Rule by its terms does not apply. And in *Nigro*, the court found there was substantial nonexempt equity in the debtor's residence and refused to excuse the debtor from compliance with the Local Rule even

where the debtor's plan provided for a 100% payment to unsecured creditors. *In re Nigro*, No. 21-01123-5-JNC, D.E. 25. The court did not address the definition of "non-exempt."

The court acknowledges that there is more than one way to read Local Rule 4002-1(g)(4), but none of those readings support the debtor's interpretation. The plain meaning of the local rule is that if the fair market value exceeds $10,000 over the debtor's claimed exemption, regardless of encumbrances, then court authority is required to sell the property. The more practical reading is that if the fair market value exceeds $10,000 over liens plus the claimed exemption, then court authority is required to sell the property. *See Sugar*, 2023 WL 1931078, at *8 ("The debtor's interest in the property is nonexempt for any value exceeding the liens and allowed exemption."). However, the determination of value must be made at the time the property is sold, not as of the petition date or the confirmation date.[9] Accordingly, the court cannot determine at confirmation whether property is "not non-exempt" for purposes of Local Rule 4002-1(g)(4) because it is dependent upon a valuation to be determined on a date in the future. Including a statement of "not non-exempt" in a nonstandard provision seeks an advisory opinion of what the value will be on the

---

[9] Mr. Maynor's counsel recently raised the timing of valuation for purposes of Local Rule 4002-1(g)(4) in another case before the court.  Determining value at the time of sale is consistent with how North Carolina applies its exemptions at judgment execution. A judgment lasts ten years, but an execution terminates 90 days after issuance. N.C. Gen. Stat. § 1-47; § 1-310. A judgment debtor is entitled to claim exemptions each time a new execution is to be issued. *See Household Finance Corp. v. Ellis*, 419 S.E.2d 592, 593-94, 107 N.C. App. 262 (N.C. App. 1992). Along with each claim of exemptions is a new determination of the value of property. N.C. Gen. Stat. § 1C-1603. Further, "[w]here the order designating exemptions indicates excess value in exempt property, the clerk, in an execution, may order the sale of property having excess value and appropriate distribution of the proceeds." N.C. Gen. Stat. § 1C-1603(e)(10). And, the debtor's exemptions may be modified upon a change of circumstances, which may include a "substantial change in value." N.C. Gen. Stat. § 1C-1603(g). Thus, a judgment creditor is not limited to collection of the value of property as of the date of its judgment, but can take advantage of appreciated value if it delays execution. This is also consistent with re-evaluating the liquidation value of a chapter 13 estate at the time of plan modification. *See In re Adams*, No 21-80425, 2023 WL 7320858, at *6 (Bankr. M.D.N.C. Nov. 3, 2023). Regardless, using an earlier date—whether the petition date or initial confirmation date—is irreconcilable with the holding in *Murphy*, which required the debtor to pay the appreciated value of the debtor's property interest to the creditors after sale.

date of a hypothetical future sale.[10] Because the Second Amended Plan contains nonstandard provisions concluding that Mr. Maynor's residence is "not non-exempt" such that Local Rule 4002-1(g)(4) and the Order and Notice do not apply, confirmation is denied.

**B.    Legal Effect of Vesting at Confirmation**

Before turning to Mr. Maynor's interpretation of "vesting" and what he contends that entails, the court reviews the basics. First, § 1327(b) provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b). Section 1327(c) states that "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan." 11 U.S.C. § 1327(c). Section 1306(a) of the Bankruptcy Code provides that in a chapter 13 bankruptcy case,

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title—
>> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
>> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11 U.S.C. § 1306(a). "By providing that the bankruptcy estate continues to be replenished by post-petition property until the case is closed, dismissed, or converted under Chapter 7, 11, or 12 of the Bankruptcy Code, § 1306(a) provides for the continued existence of the bankruptcy estate until the earliest of any of the above-mentioned events occur." *Murphy v. O'Donnell* (*In re Murphy*),

---

[10] Notwithstanding that some degree of prescience is required, the court has indicated that with the agreement of the Trustee, it would excuse the debtor from application of this rule where it seems unlikely there will ever be value above liens and the claimed exemption, as Judge Callaway did in *Robinson*.

474 F.3d 143, 153 (4th Cir. 2007). There is a statutory dissonance between having property of the estate "vest" in the debtor at confirmation under § 1327, and the estate continuing to refill with postconfirmation property under §1306.

The interplay of these two sections has confounded courts, leading to five different approaches to the concept of "vesting" in chapter 13. *See In re Baker*, 620 B.R. 655, 663-64 (Bankr. D. Colo. 2020). As described in *Baker*, those approaches are:

> Estate termination. At confirmation, the estate ceases to exist and all property of the estate, whether acquired before or after confirmation, becomes property of the debtor.

> Estate transformation. At confirmation, all property of the estate becomes property of the debtor except property essential to the debtor's performance of the plan. The chapter 13 estate continues to exist, but it contains only property necessary to performance of the plan, whether acquired before or after confirmation.

> Estate replenishment. At confirmation, all property of the estate becomes property of the debtor. The chapter 13 estate continues to exist and "refills" with property defined in section 1306 that is acquired by the debtor after confirmation, without regard to whether that property is necessary to performance of the plan.

> Estate preservation. The vesting of property in the debtor under section 1327(b) does not remove any property from the chapter 13 estate, whether acquired before or after confirmation. Property remains in the estate until the case is closed, dismissed, or converted. The debtor's rights and responsibilities with respect to property of the estate may change somewhat at confirmation, but the existence and composition of the estate are not disturbed by section 1327(b).

> Conditional vesting. At confirmation, vesting gives the debtor an immediate and fixed right to use estate property, but that right is not final until the debtor completes the plan and obtains a discharge.

*Id.*

The cases analyzing vesting primarily arise in the context of whether postconfirmation sale proceeds of vested property belong to the debtor or should be paid to creditors through plan modification; none address the more narrow issue before this court, which is what authority the court has, and the means by which that authority may be exercised, over an asset that has vested.

16

But the two issues go hand in hand, because if the court has *no* authority over an asset, it could not order a plan to be modified for the proceeds of that asset to be paid to creditors. And, the opposite is true: if the court *has* authority to allow a plan modification for sale proceeds to be paid to creditors, it must also have some authority over that asset prior to its sale. This precise conclusion was recently articulated in this district in *Sugar:*

> If vesting does not preclude the court from modifying a plan to account for the receipt of proceeds from vested property, then similarly, vesting would not strip the court of jurisdiction over the disposition of vested property before it is converted into cash proceeds. *See also Taylor v. Logan*, No. 5:20-CV-663-BO, 2021 U.S. Dist. LEXIS 103282, at *11 (E.D.N.C. June 2, 2021) ("[B]ased on the applicable language and rules, the bankruptcy court may, through an order, exercise oversight of non-exempt property, whether termed estate property or property of the Debtor, after confirmation of the Chapter 13 plan.").

*Sugar*, 2023 WL 1931078, at *6, n.4.

The Court of Appeals for the Fourth Circuit has not adopted a specific approach to vesting, but it has discussed the issue in the context of plan modification. In *Murphy*, 474 F.3d at 143, the appellate court considered whether to require modification of a confirmed plan to provide for the payment to creditors of postconfirmation sale proceeds of the debtor's residence. The court considered the debtor's argument that "the bankruptcy court was not at liberty to modify his confirmed plan because his plan, in accordance with § 1327(b), vested all property of the estate in him at the time of confirmation. According to [the debtor], once his plan was confirmed, the Chapter 13 trustee forfeited any claim to the proceeds of the sale." *Id.* at 153. The lower court had rejected that argument, determining that "[t]he debtor's revesting argument, taken to its logical conclusion, would effectively read § 1329 out of existence, and is inconsistent with the holding in *Arnold v. Weast (In re Arnold)*, 869 F.2d 240 (4th Cir. 1989)." *Murphy*, 327 B.R. at 772. On review, and after discussing the various theories of vesting, the circuit court concluded that it "need not discuss these varying interpretations or select one as the most preferable," but instead held that

"*a debtor cannot use plan confirmation as a license to shield himself from the reach of his creditors when he experiences a substantial and unanticipated change in his income.*" *Murphy*, 474 F.3d at 154 (citation omitted) (emphasis added); *see also Croniser v. Logan*, No. 5:22-cv-00352-D, 2023 U.S. Dist. LEXIS 102067, at *14 (E.D.N.C. Jun. 12, 2023) (adhering to Fourth Circuit precedent and applying *Murphy* standards).

In short, while the *Murphy* court declined to adopt a specific approach to vesting, *Murphy* absolutely stands for the proposition that the sale proceeds of a vested asset are still available for payment to creditors. Notwithstanding any larger discussion about the apparent statutory dissonance, *Murphy* remains binding on this court, and its conclusion gives this court some guidance and insight – albeit through a process of elimination – as to what approaches to vesting are and are not available in this circuit.[11] This court cannot reconcile *any* approach to vesting that allows the debtor to retain postconfirmation sale proceeds with *Murphy*, and thus must conclude that those approaches are not the current law in the Fourth Circuit.

With that background in mind, the court turns to Mr. Maynor's arguments. Several of the nonstandard provisions assert that the court's rules and procedures, and sections of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure, are inapplicable specifically because Mr. Maynor chose for his property to vest at confirmation pursuant to § 1327(b). According to Mr.

---

[11] This court undertook an analysis of what other bankruptcy courts within the Fourth Circuit – similarly bound by *Murphy* – have said about their approach to "vesting." The majority of districts within this circuit have adopted provisions either in their form plans, form orders, or local rules that provide that property vests at discharge, not at confirmation. Accordingly, it appears that no bankruptcy court has identified the approach to vesting that best aligns with *Murphy*, but instead most have avoided the issue by prohibiting vesting at confirmation. The extent to which courts may require vesting at discharge in their local form plan is currently before the Fourth Circuit in *Trantham v. Tate,* No. 22-2263 (appeal from No. 1:22-cv-00076-MOC, 2022 WL 17091982 (W.D.N.C. Nov. 21, 2022)), with oral argument tentatively scheduled for late January 2024. Whether to amend this district's form plan and order may be considered by the court and Local Rules Committee upon further guidance from the circuit court.

Maynor, that means that the property is no longer property of the estate.[12] When asked how the court could reconcile this argument with *Murphy*, and further how this argument could be consistent with any theory of vesting other than the "estate termination approach," which is clearly contrary to *Murphy*, Mr. Maynor referred the court to the analysis in a recent opinion issued from the bankruptcy court in the Eastern District of Michigan, *In re Elassal*, 654 B.R. 434 (Bankr. E.D. Mich. 2023).

The *Elassal* court adopted the "estate replenishment" approach, and concluded that because the sale proceeds of a residence that vested in the debtor at confirmation were not newly-acquired property, the debtor could not be compelled to turn over the proceeds to be paid to creditors. *Id.* at 437. In doing so, however, it noted the diverging positions on vesting across the courts. *See id.* at 437, n.2. Significantly, the *Elassal* court was unconstrained by Fourth Circuit precedent requiring post-confirmation appreciation to be paid to creditors upon the sale of an asset despite the vesting of that asset at confirmation, as were the other courts cited by *Elassal* that reached a similar conclusion.

---

[12] Mr. Maynor included the following nonstandard provisions implicating vesting:

c. EDNC LBR 4002-1(g)(4) shall not apply post-confirmation . . . because . . . post-confirmation [the debtor's residence] will not be property of the bankruptcy estate;
d. Paragraph 10 of the Order and Notice . . . shall not apply . . . because . . . post-confirmation [the debtor's residence] will not be property of the bankruptcy estate;
f. Upon confirmation, the Debtor's interest in [his residence] shall no longer be property of the bankruptcy estate pursuant to 11 USC 1329(b)(9), 11 USC 1327(b) and plan provision 7.1;
g. The Debtor shall not [be] required to file a notice pursuant to 11 USC 363(b) or Federal Bankruptcy Rule 6004(a) prior to selling vested property;
h. The debtor shall not be required to obtain a court order prior to selling any vested property.

D.E. 32 at 4.

Further, it appears that courts adopting the same "estate replenishment" approach to vesting have reached opposite conclusions with respect to whether the debtor or creditors receive the benefit of postconfirmation appreciation when the property is sold. *Compare Elassal,* 654 B.R. 434 (adopting the estate replenishment approach and authorizing debtor to use proceeds to purchase a new home, but reserving the question of what happens to any proceeds in excess of the amount needed for that purchase), *and In re Larzelere,* 633 B.R. 677, 682 (Bankr. D.N.J. 2021) (adopting the estate replenishment approach and finding proceeds are property of the debtor) *with Barbosa v. Solomon (In re Barbosa)*, 235 F.3d 31 (1st Cir. 2000) (adopting the estate replenishment approach and finding sale proceeds attributable to appreciation in value must be paid to creditors), *and In re Marsh*, 647 B.R. 725 (Bankr. W.D. Mo. 2023) (same).[13]

With courts unable to agree as to how a specific approach to vesting is to be applied postconfirmation, this court is left, through the process of elimination, with the certainty that absent revisiting its conclusion in *Murphy*, the Fourth Circuit would adopt the estate preservation or conditional vesting approaches, or the estate replenishment approach as applied by *Barbosa* and *Marsh*, but *not* the estate termination, estate transformation, or estate replenishment approach as applied by *Elassal* and *Larzelere*. Again, the conundrum is that the *Murphy* court essentially gave us its answer without showing us the specific methodology by which it got there, so, while this court can deduce from that answer the approaches that *could not* have been used to arrive at it, this court cannot be sure of which approach the *Murphy* court *did* take. That said, this much is certain: none of the approaches possibly employed by the *Murphy* court could support Mr. Maynor's asserted conclusions in his nonstandard provisions that his residence is no longer subject to court oversight due to vesting.

---

[13] The court notes that in all four of these cases, the debtor first sought and obtained court authority to sell the property, notwithstanding that the property "vested" at confirmation.

The court acknowledges that this discussion strays a bit from the issue actually before it, which is not whether postconfirmation sale proceeds of vested property are property of the estate, but whether vesting at confirmation removes an asset from the estate such that no notice or authority to sell that asset is necessary as a matter of law, as asserted in Mr. Maynor's nonstandard provision. Given that the four cases adopting the estate replenishment approach discussed in this opinion did so *after court approval* of a sale of vested property, the court finds no authority to support Mr. Maynor's position under any theory of vesting available in this circuit.

Finally, the Bankruptcy Code explicitly allows bankruptcy courts to require property to vest at a time other than at confirmation (such as at discharge), and to provide that vesting is *not* free and clear of claims or interests of creditors. 11 U.S.C. §§ 1327(b), (c). By inference, courts have the authority to impose some oversight and restraint on what it means for property to vest or how vested property may be used or transferred, which by definition is an exercise of authority less restrictive than disallowing vesting at confirmation entirely. In sum, the court cannot agree with Mr. Maynor's theory that "vesting" entirely removes property from the estate and from court oversight, and does not agree that the rules and procedures applicable to the sale of property no longer apply as a legal consequence of vesting at confirmation. Accordingly, the inclusion of nonstandard provisions asserting that the procedures for postconfirmation sale of property do not apply due to vesting is a basis for denial of confirmation.

## C.    Other Nonstandard Provisions

Finally, Mr. Maynor included three other nonstandard provisions that do not relate solely to his arguments about property being "not non-exempt" or "vested," but simply state the debtor's interpretation of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the court's local rules and orders, and the court's local form plan. Like those addressed above, these

nonstandard provisions also are inappropriate and support denial of confirmation. Those provisions are:

> b. Plan provision 7.2 shall not apply. This is a deviation from the EDNC Local Form Plan in order to avoid conflict with the Debtor's rights pursuant to 11 USC 1321, 11 USC 1322(b)(9), and 11 USC 1327(b).

> e. The Debtor must notify his attorney and the trustee of any change of address or if he experiences a substantial change in his property ownership.

> i. If the Debtor seeks to sell, lease or use estate property outside the ordinary course during the pendency of the case (e.g. property of the kind described in 11 USC 541(a)(5)), then he shall comply with the requirements of 11 USC 363(b), 11 USC 1303 and Fed Bankr Rule 6004 but shall not be required to comply with EDNC LBR 4002-1(g)(4). This provision is intended to identify the proper procedural mechanism that is applicable and avoid neglect and/or duplication with regard to any substantive or procedural requirement.

D.E. 32 at § 8.1. The court will address each in turn.

### 1.    Nonstandard Provision (b)

With respect to nonstandard provision (b), as noted above, plan provision 7.2 provides generally that § 363 of the Bankruptcy Code, as well as all other provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules, remain in effect postconfirmation. Mr. Maynor contends that this provision conflicts with or abridges rights given to him by the Bankruptcy Code and thus it should not apply where property vests in the debtor at confirmation. In essence, through this nonstandard provision, Mr. Maynor seeks a determination by this court that this district's local form plan is invalid. To the extent this argument overlaps with Mr. Maynor's argument that this court simply has no authority to require anything with respect to vested property postconfirmation, the court incorporates its discussion of "vesting" from above and rejects this provision. To the extent this provision seeks to have the court, through confirmation, agree with him that plan provision 7.2 (and thus the requirements of the Bankruptcy Code, Bankruptcy Rules, and Local Rules) conflicts with the debtor's rights under the Bankruptcy Code, that, too is rejected.

In essence, Mr. Maynor contends that because the Bankruptcy Code imposes certain requirements, it necessarily means that other requirements are not allowed. For example, Mr. Maynor contends that because § 363(b) only requires *notice* of a potential sale of property of the estate outside of the ordinary course of business, courts may not require *court approval* of a proposed sale, nor may the court extend its authority to consider such a sale if property has vested in the debtor because, according to Mr. Maynor, that property is no longer property of the estate. Of course, if a party were to object to the notice provided under § 363(b), then court approval (overruling any objection) would be necessary for the debtor to sell the property.

As the Trustee points out, however, the Bankruptcy Code does not give debtors an unfettered right to do what they please with their property while the case is pending.[14] The Code clearly authorizes the court to require vesting at discharge, 11 U.S.C. § 1327, and continued oversight of certain assets, whether vested or not, is less intrusive than requiring vesting at discharge. This oversight falls within the court's authority. Chapter 13 debtors are given relatively few obligations with which to comply postconfirmation in exchange for the significant benefits of the automatic stay, a discharge upon completion of a plan that may require ***no*** repayment to unsecured creditors, and, as in Mr. Maynor's case, the ability to force a secured creditor to accept a repayment plan after default that extends over five years. More generally, chapter 13 is a voluntary process: if Mr. Maynor does not wish to comply with these minimal requirements, he may dismiss his case.

---

[14] In addition, Local Rule 4002-1(g)(4) does not *prohibit* the debtor from selling property during the chapter 13 case; instead, it specifies the process through which a debtor may sell property. *Cf. Higgins v. Logan*, 635 B.R. 776, 779-82 (E.D.N.C. 2021) (holding Local Rule 4002-1(g)(5), which sets forth the procedure for a debtor to seek court authority to incur debt over $10,000 during the pendency of a chapter 13 case, is procedural and not substantive, as it "does not prohibit the debtor from incurring post-petition debt of $10,000.00 or more. Rather, it specifies the process by which a debtor may seek to incur such debt.").

In sum, the court will not confirm a plan with a provision stating that the court's form plan – which requires compliance with the Bankruptcy Code, Bankruptcy Rules, and Local Rules – conflicts with the debtor's rights under the Bankruptcy Code. This is a misstatement of the law and an inappropriate use of nonstandard provisions.

### 2.    Nonstandard Provision (e)

Nonstandard provision (e) is both duplicative and an incomplete recitation of one provision of the Order and Notice. As noted above, that provision requires:

> (4) <u>Financial/Address Changes</u>: You must notify your attorney and the trustee of any change of mailing address or employment. You must notify the court of any change in mailing address. You must also promptly notify your attorney and the trustee of any substantial changes in your financial circumstances, including substantial changes in your income, expenses, or property Ownership. . . .

D.E. 8. Nonstandard provision (e) rewrites this paragraph to limit the debtor's notice requirements only to any change of address or a substantial change in his property ownership, omitting any other substantial change in financial circumstances. The Trustee's objection raised the question of whether nonstandard provision (e) was "to limit the debtor's obligations under the Order and Notice, or to obfuscate and confuse the trustee as to his intention with respect to this or any of the other nonstandard provisions of the Plan." D.E. 33 at ¶ 31. The court is equally flummoxed by what is intended by this nonstandard provision. The debtor already is required to notify his attorney and the Trustee of a change of address and any change in property ownership, and there is no need to repeat that obligation in a nonstandard provision – it is, by inclusion in the Order and Notice, already "standard."

Accordingly, the inclusion of this language in section 8.1 of the Second Amended Plan suggests that Mr. Maynor intends to override the obligations delineated in the Order and Notice and to eliminate the requirement to notify his counsel and the Trustee of other substantial changes

in financial circumstances, such as a change in income or expenses. As with the other nonstandard provisions, there is no factual explanation of why Mr. Maynor should be excused from the requirements imposed on all debtors in this district, nor can the court imagine any basis on which a debtor would be excused from notifying his counsel and the Trustee of a substantial change in income or expenses.[15]

### 3.    Nonstandard Provision (i)

Nonstandard provision (i) seems to have two goals: first, to limit all procedural requirements regarding the sale of property *only* to property of the estate (which Mr. Maynor contends will not include his residence postconfirmation due to vesting), and second, to the extent any rule must be followed, to have a declaration through his nonstandard provision that the local rule governing the sale of property is not the "proper procedural mechanism." Mr. Maynor contends instead that the debtor is only required to provide notice under § 363(b) and Federal Rule of Bankruptcy Procedure 6004. The court has already addressed the issue of vesting, and concludes that any nonstandard provision seeking to exempt the debtor from the procedures related to sale of property during the pendency of the plan based on his legal interpretation of the meaning of "vesting" is inappropriate and a basis upon which to deny confirmation.

With respect to the second apparent goal, this court has authority to establish procedures to exercise oversight of the debtor's major financial transactions during the course of the case, including its requirements under Local Rule 4002-1(g)(4). Local Rule 4002-1(g)(4) *is* the "proper

---

[15] To the extent this provision was intended to, in the context of the other nonstandard provisions, acknowledge that Mr. Maynor still must notify his counsel and the Trustee of any sale of property notwithstanding the asserted inapplicability of the requirements to give notice or seek court authority in advance of a sale, the court agrees that if Mr. Maynor is to be excused from those requirements, notice after a sale is appropriate. However, it is unclear whether that is the meaning or intent of this nonstandard provision, and in light of the court's denial of the remaining nonstandard provisions, this provision is unnecessary.

procedural mechanism" and full, transparent compliance with that rule necessarily includes compliance with the plain requirements of § 363(b). "While local rules are tied to the Federal Rules of Bankruptcy Procedure, courts are authorized to implement local rules that are necessary for the administration of cases filed in their districts, especially rules like Local Rule 4002-1(g)(4), that provide structure for a successful Chapter 13 plan and eventual discharge. Nothing in the Local Rule conflicts with § 363 and Rule 6004." *Sugar*, 2023 WL 1931078, at *7. Mr. Maynor's effort to deem the court's Local Rules improper through a nonstandard plan provision is rejected and constitutes a basis upon which to deny confirmation.

## CONCLUSION

This court has emphasized that it would allow prospective relief from certain provisions of the court's rules and procedures where that relief is warranted by the specific facts before it, and that while a separate motion seeking that relief is preferable, the court also would consider providing that relief through a debtor's *appropriate* use of nonstandard provisions. The court offered to do exactly that at the August 10 hearing. What the court will *not* do is excuse debtors from compliance with the local rules and procedures based upon the debtors' inclusion in their plan of nonstandard provisions that purport to set out statements or interpretations of law, or to assert that the rules and procedures are invalid or contrary to law. Based on the foregoing, confirmation is **DENIED**. The debtor may file an amended plan within 14 days of the date of this order.

**END OF DOCUMENT**